IN THE UNITED STATE DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KLODIAN NAZAJ,<br>            Plaintiff,<br><br>-vs-<br><br>HOME DEPOT U.S.A. INC.,<br>a Delaware corporation, MIKE OESTMANN,<br>FRED TORRES, ULISES LAMAN, ZABRINA<br>FARMER, KIMBERLY HOSCH, and<br>HENRY HALE<br><br>            Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   No. 07 CV 06944<br>)   Honorable William T. Hart |

## **FIRST AMENDED COMPLAINT**

NOW COMES the Plaintiff, KLODIAN NAZAJ, (hereinafter "NAZAJ"), by his counsel NEMEROFF LAW OFFICES, LTD., and complaining against the defendant AT HOME DEPOT U.S.A. INC., a Delaware corporation (hereinafter "HOME DEPOT"), MIKE OESTMANN (hereinafter "OESTMANN"), FRED TORRES (hereinafter "TORRES"), ULISES LAMAN (hereinafter "LAMAN"), ZABRINA FARMER (herein after "FARMER"), KIMBERLY HOSCH (hereinafter "HOSCH") and HENRY HALE (hereinafter "HALE")  states as follows:

### **PARTIES**

1.      Plaintiff Klodian Nazaj is an adult residing in the City of Chicago, County of Cook, State of Illinois.

2.      Defendant Home Depot U.S.A. Inc. is a Delaware corporation registered to do business in the State of Illinois.

3.      Defendant Mike Oestmann is an adult residing in the City of Woodridge, County of DuPage, State of Illinois.

4.      Defendant Fred Torres is an adult residing in the City of Chicago, County of Cook, State of Illinois.

5.      Defendant Ulises Laman is an adult residing in the City of Huntley, County of McHenry, State of Illinois.

.1

6. Defendant ZaBrina Farmer is an adult residing in the City of Chicago, County of Cook, State of Illinois.

7. Defendant Henry Hale is an adult residing in the City of Chicago, County of Cook, State of Illinois.

## COUNT I
### BATTERY

1. On September 13, 2007, Defendant HOME DEPOT maintained a business selling building supplies and tools to the general public on North Avenue in the City of Chicago, County of Cook, State of Illinois.

2. On or about September 13, 2007, Plaintiff NAZAJ was a customer at the store owned and operated by defendant HOME DEPOT on North Avenue in Chicago, Illinois.

3. At all relevant times, Plaintiff NAZAJ was legally an invitee on the property of the HOME DEPOT on North Avenue in Chicago.

4. At all relevant times, Plaintiff entered the above referenced HOME DEPOT at approximately 1:30 p.m. to return a tool previously purchased at the store and to do additional shopping.

5. After shopping at the HOME DEPOT, plaintiff proceeded to a checkout cashier to pay for the items he had selected while shopping at the store.

6. After what plaintiff thought was making full payment for the items in his cart, he proceeded to walk toward the security guard who was located near the exit of the Home Depot to have his receipt checked before leaving the store.

7. Right before plaintiff reached the security officer, plaintiff was accosted by two persons acting as employees and/or agents of defendant Home Depot.

8. At that time and place, these two men, acting as agent for their employer and within the scope of their employment, committed a battery upon the Plaintiff in that:

    a. Without permission of the Plaintiff, touched Plaintiff in an insulting, provoking, and offensive manner;

    b. Without permission of Plaintiff, grabbed Plaintiff's wrists and arms;

2

    c.      Without permission of the Plaintiff, physically removed Plaintiff from the customer area of the store, placing Plaintiff in handcuffs against his will and forcing him to the security office;

    9.     Defendant, through its employees and/or agents, acted with intent to cause the unpermitted offensive touching of Plaintiff's person.

    10.    As a direct and proximate result of the actions of the Defendant, through its employees and/or agents, Plaintiff suffered damage to his person, anguish for the unpermitted offensive touching of his person, physical discomfort, and embarrassment.

    11.    The defendant HOME DEPOT approved and ratified the actions of its employees and/or agents as alleged in this Count I.

    12.    The defendant HOME DEPOT allowed its employees and/or agents to take such action and failed to discipline them for taking such actions.

    13.    Defendant HOME DEPOT trained and instructed its employees and/or agents to take such actions, and did nothing to discourage them from taking such action.

    14.    Defendant HOME DEPOT believes that it derives benefit when its personnel acts aggressively.

    15.    Under the doctrine of respondeat superior, Defendant HOME DEPOT is liable for the intentional tortious actions of its employees and agents that are acting within the scope and authority granted by the employer, and from which the employer gains benefit, specifically the actions of its employees and/or agents complained of in this Count I.

    16.    Defendant HOME DEPOT has policies which encourage its employees to act in an aggressive manner, including the manner in which these employees and/or agents acted in this instance as complained in this Count I.

    17.    In addition to compensatory damages for the intentional tortious acts of its employees and agents which were approved and ratified by defendants HOME DEPOT, punitive damages are necessary to deter the defendant, and others like the defendant, from committing or authorizing similar torts.

    WHEREFORE, Plaintiff KLODIAN NAZAJ prays that this Court enter judgment against defendant HOME DEPOT U.S.A. INC. for battery in the amount in excess of

$50,000 for compensatory damages and $750,000 for punitive damages, plus costs of the lawsuit.

**COUNT II**

**FALSE IMPRISONMENT**

1.    On September 13, 2007, Defendant HOME DEPOT maintained a business selling building supplies and tools to the general public on North Avenue in the City of Chicago, County of Cook, State of Illinois.

2.    On or about September 13, 2007, Plaintiff NAZAJ was a customer at the store owned and operated by defendant HOME DEPOT on North Avenue in Chicago, Illinois.

3.    At all relevant times, Plaintiff NAZAJ was legally an invitee on the property of the HOME DEPOT on North Avenue in Chicago.

4.    At all relevant times, Plaintiff entered the above referenced HOME DEPOT at approximately 1:30 p.m. to return a tool previously purchased at the store and to do additional shopping.

5.    After shopping at the HOME DEPOT, plaintiff proceeded to a checkout cashier to pay for the items he had selected while shopping at the store.

6.    After what plaintiff thought was making full payment for the items in his cart, he proceeded to walk toward the security guard who was located near the exit of the Home Depot to have his receipt checked before leaving the store.

7.    Right before plaintiff reached the security officer, plaintiff was accosted by two persons acting as employees and/or agents of defendant Home Depot.

8.    Defendant, HOME DEPOT, through its employees and/or agents, then placed handcuffs on plaintiff and took him into custody.

9.    At the time and place as alleged in this paragraph, the defendant HOME DEPOT, by and through its employees and/or agents, committed false imprisonment of the Plaintiff by unlawful restraint of his freedom of movement against his will in that:

    a.    Plaintiff was forcefully removed from the public customer area to a security office inside the building in handcuffs;

    b.    Plaintiff was not to allow leave the security office;

4

    c.    Plaintiff, due to a complaint signed by Home Depot employees and/or agents, was arrested by Chicago Police officers by filing a false report that Plaintiff had committed a crime when Defendants knew there was no probable cause for making such a report.

    10.    HOME DEPOT, through its employees and/or agents, intended to restrain Plaintiff's freedom of movement against his will.

    11.    HOME DEPOT, through its employees and/or agents, did not have legal authority to restrain Plaintiff's interest in freedom from confinement.

    12.    As a direct proximate result of the actions of Defendant HOME DEPOT, through its employees and/or agents, Plaintiff was confined in custody and against his will for nearly ten (10) hours.

    13.    Plaintiff, directly and proximately caused by Defendant's actions, suffered anguish, loss of time, lost earnings, physical discomfort, interruption of his business and embarrassment.

    14.    The defendant HOME DEPOT approved and ratified the actions of its employees and/or agents as alleged in this Count I.

    15.    The defendant HOME DEPOT allowed its employees and/or agents to take such action and failed to discipline them for taking such actions.

    16.    Defendant HOME DEPOT trained and instructed its employees and/or agents to take such actions, and did nothing to discourage them from taking such action.

    17.    Defendant HOME DEPOT believes that it derives benefit when its personnel acts aggressively.

    18.    Under the doctrine of respondeat superior, Defendant HOME DEPOT is liable for the intentional tortious actions of its employees and agents that are acting within the scope and authority granted by the employer, and from which the employer gains benefit, specifically the actions of its employees and/or agents complained of in this Count I.

    19.    Defendant HOME DEPOT has policies which encourage its employees to restrain the freedom of persons without legal authority.

    20.    In addition to compensatory damages for the intentional tortious acts of its employees and agents which were approved and ratified by defendants HOME DEPOT,

punitive damages are necessary to deter the defendant, and others like the defendant, from committing or authorizing similar torts.

WHEREFORE, Plaintiff KLODIAN NAZAJ prays that this Court enter judgment against defendant HOME DEPOT U.S.A. INC. for false imprisonment in the amount in excess of $50,000 for compensatory damages and $750,000 for punitive damages, plus costs of the lawsuit.

## COUNT III
### MALICIOUS PROSECUTION

1. On September 13, 2007, Defendant HOME DEPOT maintained a business selling building supplies and tools to the general public on North Avenue in the City of Chicago, County of Cook, State of Illinois.

2. On or about September 13, 2007, Plaintiff NAZAJ was a customer at the store owned and operated by defendant HOME DEPOT on North Avenue in Chicago, Illinois.

3. At all relevant times, Plaintiff NAZAJ was legally an invitee on the property of the HOME DEPOT on North Avenue in Chicago.

4. At all relevant times, Plaintiff entered the above referenced HOME DEPOT at approximately 1:30 p.m. to return a tool previously purchased at the store and to do additional shopping.

5. After shopping at the HOME DEPOT, plaintiff proceeded to a checkout cashier to pay for the items he had selected while shopping at the store.

6. After what plaintiff thought was making full payment for the items in his cart, he proceeded to walk toward the security guard who was located near the exit of the Home Depot to have his receipt checked before leaving the store.

7. Right before plaintiff reached the security officer, plaintiff was accosted by two persons acting as employees and/or agents of defendant Home Depot.

8. Defendant, HOME DEPOT, through its employees and/or agents, then placed handcuffs on plaintiff and took him into custody.

9. Defendant HOME DEPOT, through its employees and/or agents, caused Plaintiff to be arrested by Chicago Police officers by filing a false report that Plaintiff had

6

committed a crime when Defendants knew there was no probable cause for making such a report.

10.    The criminal case against Plaintiff was dismissed by order of the Circuit Court of Cook County judge before whom the case was heard.

11.    HOME DEPOT, though its employees and/or agents, failed to appear as required at the court date in which the case was dismissed.

12.    HOME DEPOT, through its employees and/or agents, acted with malice toward Plaintiff by filing criminal retail theft and criminal damages to property charges against Plaintiff when Defendants knew there was no probable cause for making such report.

13.    As a direct proximate result of the actions of Defendant HOME DEPOT, through its employees and/or agents, Plaintiff was confined in custody and against his will for nearly ten (10) hours.

14.    Plaintiff, directly and proximately caused by Defendant's actions, suffered anguish, loss of time, lost earnings, physical discomfort, interruption of his business and embarrassment.

15.    The defendant HOME DEPOT approved and ratified the actions of its employees and/or agents as alleged in this Count I.

16.    The defendant HOME DEPOT allowed its employees and/or agents to take such action and failed to discipline them for taking such actions.

17.    Defendant HOME DEPOT trained and instructed its employees and/or agents to take such actions, and did nothing to discourage them from taking such action.

18.    Under the doctrine of respondeat superior, Defendant HOME DEPOT is liable for the intentional tortious actions of its employees and agents that are acting within the scope and authority granted by the employer, and from which the employer gains benefit, specifically the actions of its employees and/or agents complained of in this Count I.

19.    In addition to compensatory damages for the intentional tortious acts of its employees and agents which were approved and ratified by defendants HOME DEPOT, punitive damages are necessary to deter the defendant, and others like the defendant, from committing or authorizing similar torts.

7

20.    As a direct proximate result of the actions of Defendant HOME DEPOT, through the actions of its employees and/or agents, for maliciously filing a false police report which commenced a criminal retail theft charge and a criminal damages to property charge against plaintiff, Plaintiff suffered anguish, loss of time, lost earnings, physical discomfort, interruption of his business and embarrassment.

WHEREFORE, Plaintiff KLODIAN NAZAJ prays that this Court enter judgment against defendant HOME DEPOT U.S.A. INC. for malicious prosecution in the amount in excess of $50,000 for compensatory damages and $750,000 for punitive damages, plus costs of the lawsuit.

## COUNT IV

## DEFAMATION
### (Nagaj vs. Oestmann)

1.    On September 13, 2007, Defendant HOME DEPOT maintained a business selling building supplies and tools to the general public on North Avenue in the City of Chicago, County of Cook, State of Illinois.

2.    On September 13, 2007, Defendant OESTMANN was an agent and/or employee of Defendant HOME DEPOT.

3.    On or about September 13, 2007, Plaintiff NAZAJ was a customer at the store owned and operated by defendant HOME DEPOT on North Avenue in Chicago, Illinois.

4.    At all relevant times, Plaintiff NAZAJ was legally an invitee on the property of the HOME DEPOT on North Avenue in Chicago.

5.    At all relevant times, Plaintiff entered the above referenced HOME DEPOT at approximately 1:30 p.m. to return a tool previously purchased at the store and to do additional shopping.

6.    After shopping at the HOME DEPOT, plaintiff proceeded to a checkout cashier to pay for the items he had selected while shopping at the store.

8

7.     After what plaintiff thought was making full payment for the items in his cart, he proceeded to walk toward the security guard who was located near the exit of the Home Depot to have his receipt checked before leaving the store.

8.     Right before plaintiff reached the security officer, plaintiff was accosted by two persons acting as employees and/or agents of defendant Home Depot.

9.     Defendant, HOME DEPOT, through its employees and/or agents, then placed handcuffs on plaintiff and took him into custody.

10.     Plaintiff, due to a complaint signed by Home Depot employees and/or agents, was arrested by Chicago Police officers by filing a false report that Plaintiff had committed a crime when Defendant OESTMANN knew there was no probable cause for making such a report:

      a.     Defendant's statement to the Chicago police was defamatory per se imputing commission of a criminal offense by the plaintiff which caused harm to his reputation that lowered the plaintiff in the eyes of his community and/or deterred others from associating with him;

      b.     The publication of the defamatory statements imputing the commission of a criminal offense was an unprivileged publication to the Chicago police department and that this publication has caused damages to the plaintiff;

      c.     The defamatory statement imputing the commission of a criminal offense was so obviously and materially harmful to the plaintiff that injury to his reputation is presumed.

11.     In addition to compensatory damages for the intentional tortious acts of its employees and agents which were made by defendant OESTMANN, punitive damages are necessary to deter the defendant, and others like the defendant, from committing or authorizing similar torts.

WHEREFORE, Plaintiff KLODIAN NAZAJ prays that this Court enter judgment against defendant MIKE OESTMANN for defamation in the amount in excess of $50,000 for compensatory damages and $750,000 for punitive damages, plus costs of the lawsuit.

9

## COUNT V

## DEFAMATION
**(Nagaj vs. Torres)**

1.     On September 13, 2007, Defendant HOME DEPOT maintained a business selling building supplies and tools to the general public on North Avenue in the City of Chicago, County of Cook, State of Illinois.

2.     On September 13, 2007, Defendant TORRES was an agent and/or employee of Defendant HOME DEPOT.

3.     On or about September 13, 2007, Plaintiff NAZAJ was a customer at the store owned and operated by defendant HOME DEPOT on North Avenue in Chicago, Illinois.

4.     At all relevant times, Plaintiff NAZAJ was legally an invitee on the property of the HOME DEPOT on North Avenue in Chicago.

5.     At all relevant times, Plaintiff entered the above referenced HOME DEPOT at approximately 1:30 p.m. to return a tool previously purchased at the store and to do additional shopping.

6.     After shopping at the HOME DEPOT, plaintiff proceeded to a checkout cashier to pay for the items he had selected while shopping at the store.

7.     After what plaintiff thought was making full payment for the items in his cart, he proceeded to walk toward the security guard who was located near the exit of the Home Depot to have his receipt checked before leaving the store.

8.     Right before plaintiff reached the security officer, plaintiff was accosted by two persons acting as employees and/or agents of defendant Home Depot.

9.     Defendant, HOME DEPOT, through its employees and/or agents, then placed handcuffs on plaintiff and took him into custody.

10.     Plaintiff, due to a complaint signed by Home Depot employees and/or agents, was arrested by Chicago Police officers by filing a false report that Plaintiff had committed a crime when Defendant TORRES knew there was no probable cause for making such a report:

10

   a.    Defendant's statement to the Chicago police was defamatory per
         se imputing commission of a criminal offense by the plaintiff
         which caused harm to his reputation that lowered the plaintiff in
         the eyes of his community and/or deterred others from associating
         with him;

   b.    The publication of the defamatory statement imputing the
         commission of a criminal offense was an unprivileged publication
         to the Chicago police department and that this publication has
         caused damages to the plaintiff;

   c.    The defamatory statement imputing the commission of a criminal
         offense was so obviously and materially harmful to the plaintiff
         that injury to his reputation is presumed.

   11.    In addition to compensatory damages for the intentional tortious acts of its
employees and agents which were made by defendant TORRES, punitive damages are
necessary to deter the defendant, and others like the defendant, from committing or
authorizing similar torts.

   WHEREFORE, Plaintiff KLODIAN NAZAJ prays that this Court enter judgment
against defendant FRED TORRES for defamation in the amount in excess of $50,000 for
compensatory damages and $750,000 for punitive damages, plus costs of the lawsuit.

## COUNT VI
### DEFAMATION
### (Nagaj vs. Laman)

   1.    On September 13, 2007, Defendant HOME DEPOT maintained a business
selling building supplies and tools to the general public on North Avenue in the City of
Chicago, County of Cook, State of Illinois.

   2.    On September 13, 2007, Defendant LAMAN was an agent and/or
employee of Defendant HOME DEPOT.

   3.    On or about September 13, 2007, Plaintiff NAZAJ was a customer at the
store owned and operated by defendant HOME DEPOT on North Avenue in Chicago,
Illinois.

4.    At all relevant times, Plaintiff NAZAJ was legally an invitee on the property of the HOME DEPOT on North Avenue in Chicago.

5.    At all relevant times, Plaintiff entered the above referenced HOME DEPOT at approximately 1:30 p.m. to return a tool previously purchased at the store and to do additional shopping.

6.    After shopping at the HOME DEPOT, plaintiff proceeded to a checkout cashier to pay for the items he had selected while shopping at the store.

7.    After what plaintiff thought was making full payment for the items in his cart, he proceeded to walk toward the security guard who was located near the exit of the Home Depot to have his receipt checked before leaving the store.

8.    Right before plaintiff reached the security officer, plaintiff was accosted by two persons acting as employees and/or agents of defendant Home Depot.

9.    Defendant, HOME DEPOT, through its employees and/or agents, then placed handcuffs on plaintiff and took him into custody.

10.   Plaintiff, due to a complaint signed by Home Depot employees and/or agents, was arrested by Chicago Police officers by filing a false report that Plaintiff had committed a crime when Defendant LAMAN knew there was no probable cause for making such a report:

        a.    Defendant's statement to the Chicago police was defamatory per se imputing commission of a criminal offense by the plaintiff which caused harm to his reputation that lowered the plaintiff in the eyes of his community and/or deterred others from associating with him;

        b.    The publication of the defamatory statement imputing the commission of a criminal offense was an unprivileged publication to the Chicago police department and that this publication has caused damages to the plaintiff;

        c.    The defamatory statement imputing the commission of a criminal offense was so obviously and materially harmful to the plaintiff that injury to his reputation is presumed.

12

11.    In addition to compensatory damages for the intentional tortious acts of its employees and agents which were made by defendant LAMAN, punitive damages are necessary to deter the defendant, and others like the defendant, from committing or authorizing similar torts.

WHEREFORE, Plaintiff KLODIAN NAZAJ prays that this Court enter judgment against defendant ULISES LAMAN for defamation in the amount in excess of $50,000 for compensatory damages and $750,000 for punitive damages, plus costs of the lawsuit.

## COUNT VII
## DEFAMATION
### (Nagaj vs. Farmer)

1.    On September 13, 2007, Defendant HOME DEPOT maintained a business selling building supplies and tools to the general public on North Avenue in the City of Chicago, County of Cook, State of Illinois.

2.    On September 13, 2007, Defendant FARMER was an agent and/or employee of Defendant HOME DEPOT.

3.    On or about September 13, 2007, Plaintiff NAZAJ was a customer at the store owned and operated by defendant HOME DEPOT on North Avenue in Chicago, Illinois.

4.    At all relevant times, Plaintiff NAZAJ was legally an invitee on the property of the HOME DEPOT on North Avenue in Chicago.

5.    At all relevant times, Plaintiff entered the above referenced HOME DEPOT at approximately 1:30 p.m. to return a tool previously purchased at the store and to do additional shopping.

6.    After shopping at the HOME DEPOT, plaintiff proceeded to a checkout cashier to pay for the items he had selected while shopping at the store.

7.    After what plaintiff thought was making full payment for the items in his cart, he proceeded to walk toward the security guard who was located near the exit of the Home Depot to have his receipt checked before leaving the store.

8.    Right before plaintiff reached the security officer, plaintiff was accosted by two persons acting as employees and/or agents of defendant Home Depot.

13

9.    Defendant, HOME DEPOT, through its employees and/or agents, then placed handcuffs on plaintiff and took him into custody.

10.    Plaintiff, due to a complaint signed by Home Depot employees and/or agents, was arrested by Chicago Police officers by filing a false report that Plaintiff had committed a crime when Defendant FARMER knew there was no probable cause for making such a report:

   a.    Defendant's statement to the Chicago police was defamatory per se imputing commission of a criminal offense by the plaintiff which caused harm to his reputation that lowered the plaintiff in the eyes of his community and/or deterred others from associating with him;

   b.    The publication of the defamatory statement imputing the commission of a criminal offense was an unprivileged publication to the Chicago police department and that this publication has caused damages to the plaintiff;

   c.    The defamatory statement imputing the commission of a criminal offense was so obviously and materially harmful to the plaintiff that injury to his reputation is presumed.

11.    In addition to compensatory damages for the intentional tortious acts of its employees and agents which were made by defendant FARMER, punitive damages are necessary to deter the defendant, and others like the defendant, from committing or authorizing similar torts.

WHEREFORE, Plaintiff KLODIAN NAZAJ prays that this Court enter judgment against defendant ZABRINA FARMER for defamation in the amount in excess of $50,000 for compensatory damages and $750,000 for punitive damages, plus costs of the lawsuit.

14

## COUNT VIII

## DEFAMATION
### (Nagaj vs. Hosch)

1.     On September 13, 2007, Defendant HOME DEPOT maintained a business selling building supplies and tools to the general public on North Avenue in the City of Chicago, County of Cook, State of Illinois.

2.     On September 13, 2007, Defendant HOSCH was an agent and/or employee of Defendant HOME DEPOT.

3.     On or about September 13, 2007, Plaintiff NAZAJ was a customer at the store owned and operated by defendant HOME DEPOT on North Avenue in Chicago, Illinois.

4.     At all relevant times, Plaintiff NAZAJ was legally an invitee on the property of the HOME DEPOT on North Avenue in Chicago.

5.     At all relevant times, Plaintiff entered the above referenced HOME DEPOT at approximately 1:30 p.m. to return a tool previously purchased at the store and to do additional shopping.

6.     After shopping at the HOME DEPOT, plaintiff proceeded to a checkout cashier to pay for the items he had selected while shopping at the store.

7.     After what plaintiff thought was making full payment for the items in his cart, he proceeded to walk toward the security guard who was located near the exit of the Home Depot to have his receipt checked before leaving the store.

8.     Right before plaintiff reached the security officer, plaintiff was accosted by two persons acting as employees and/or agents of defendant Home Depot.

9.     Defendant, HOME DEPOT, through its employees and/or agents, then placed handcuffs on plaintiff and took him into custody.

10.    Plaintiff, due to a complaint signed by Home Depot employees and/or agents, was arrested by Chicago Police officers by filing a false report that Plaintiff had committed a crime when Defendant HOSCH knew there was no probable cause for making such a report:

> a.     Defendant's statement to the Chicago police was defamatory per se imputing commission of a criminal offense by the plaintiff which

15

caused harm to his reputation that lowered the plaintiff in the eyes
of his community and/or deterred others from associating with
him;

b.    The publication of the defamatory statement imputing the
commission of a criminal offense was an unprivileged publication
to the Chicago police department and that this publication has
caused damages to the plaintiff;

c.    The defamatory statement imputing the commission of a criminal
offense was so obviously and materially harmful to the plaintiff
that injury to his reputation is presumed.

11.    In addition to compensatory damages for the intentional tortious acts of its
employees and agents which were made by defendant HOSCH, punitive damages are
necessary to deter the defendant, and others like the defendant, from committing or
authorizing similar torts.

WHEREFORE, Plaintiff KLODIAN NAZAJ prays that this Court enter judgment
against defendant KIMBERLY HOSCH for defamation in the amount in excess of
$50,000 for compensatory damages and $750,000 for punitive damages, plus costs of the
lawsuit.

## COUNT IX
### DEFAMATION
### (Nagaj vs. Hale)

1.    On September 13, 2007, Defendant HOME DEPOT maintained a business
selling building supplies and tools to the general public on North Avenue in the City of
Chicago, County of Cook, State of Illinois.

2.    On September 13, 2007, Defendant HENRY HALE was an agent of
Defendant HOME DEPOT and he was employed with MetroOne Security.

3.    On or about September 13, 2007, Plaintiff NAZAJ was a customer at the
store owned and operated by defendant HOME DEPOT on North Avenue in Chicago,
Illinois.

4. At all relevant times, Plaintiff NAZAJ was legally an invitee on the property of the HOME DEPOT on North Avenue in Chicago.

5. At all relevant times, Plaintiff entered the above referenced HOME DEPOT at approximately 1:30 p.m. to return a tool previously purchased at the store and to do additional shopping.

6. After shopping at the HOME DEPOT, plaintiff proceeded to a checkout cashier to pay for the items he had selected while shopping at the store.

7. After what plaintiff thought was making full payment for the items in his cart, he proceeded to walk toward the security guard who was located near the exit of the Home Depot to have his receipt checked before leaving the store.

8. Right before plaintiff reached the security officer, plaintiff was accosted by two persons acting as employees and/or agents of defendant Home Depot.

9. Defendant, HOME DEPOT, through its employees and/or agents, then placed handcuffs on plaintiff and took him into custody.

10. Plaintiff, due to a complaint signed by Home Depot employees and/or agents, was arrested by Chicago Police officers by filing a false report that Plaintiff had committed a crime when Defendant HALE knew there was no probable cause for making such a report:

        a. Defendant's statement to the Chicago police was defamatory per se imputing commission of a criminal offense by the plaintiff which caused harm to his reputation that lowered the plaintiff in the eyes of his community and/or deterred others from associating with him;

        b. The publication of the defamatory statement imputing the commission of a criminal offense was an unprivileged publication to the Chicago police department and that this publication has caused damages to the plaintiff;

        c. The defamatory statement imputing the commission of a criminal offense was so obviously and materially harmful to the plaintiff that injury to his reputation is presumed.

11.    In addition to compensatory damages for the intentional tortious acts of its employees and agents which were made by defendant HENRY HALE, punitive damages are necessary to deter the defendant, and others like the defendant, from committing or authorizing similar torts.

WHEREFORE, Plaintiff KLODIAN NAZAJ prays that this Court enter judgment against defendant HENRY HALE for defamation in the amount in excess of $50,000 for compensatory damages and $750,000 for punitive damages, plus costs of the lawsuit.

## COUNT X

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Nagaj vs. Home Depot)

1.    On September 13, 2007, Defendant HOME DEPOT maintained a business selling building supplies and tools to the general public on North Avenue in the City of Chicago, County of Cook, State of Illinois.

2.    On or about September 13, 2007, Plaintiff NAZAJ was a customer at the store owned and operated by defendant HOME DEPOT on North Avenue in Chicago, Illinois.

3.    At all relevant times, Plaintiff NAZAJ was legally an invitee on the property of the HOME DEPOT on North Avenue in Chicago.

4.    At all relevant times, Plaintiff entered the above referenced HOME DEPOT at approximately 1:30 p.m. to return a tool previously purchased at the store and to do additional shopping.

5.    After shopping at the HOME DEPOT, plaintiff proceeded to a checkout cashier to pay for the items he had selected while shopping at the store.

6.    After what plaintiff thought was making full payment for the items in his cart, he proceeded to walk toward the security guard who was located near the exit of the Home Depot to have his receipt checked before leaving the store.

7.    Right before plaintiff reached the security officer, plaintiff was accosted by two persons acting as employees and/or agents of defendant Home Depot.

18

8.    Defendant, HOME DEPOT, through its employees and/or agents, then placed handcuffs on plaintiff and took him into custody.

9.    At that time and place, these two men, acting as agent for their employer and within the scope of their employment, committed a battery upon the Plaintiff in that:

a.    Without permission of the Plaintiff, touched Plaintiff in an insulting, provoking, and offensive manner;

b.    Without permission of Plaintiff, grabbed Plaintiff's wrists and arms;

c.    Without permission of the Plaintiff, physically removed Plaintiff from the customer area of the store, placing Plaintiff in handcuffs against his will and forcing him to the security office;

10.   Defendant, through its employees and/or agents, acted with intent to cause the unpermitted offensive touching of Plaintiff's person.

11.   As a direct and proximate result of the actions of the Defendant, through its employees and/or agents, Plaintiff suffered damage to his person, anguish for the unpermitted offensive touching of his person, physical discomfort, and embarrassment.

12.   At the time and place as alleged in this paragraph, the defendant HOME DEPOT, by and through its employees and/or agents, committed false imprisonment of the Plaintiff by unlawful restraint of his freedom of movement against his will in that:

a.    Plaintiff was forcefully removed from the public customer area to a security office inside the building in handcuffs;

b.    Plaintiff was not to allow leave the security office;

c.    Plaintiff, due to a complaint signed by Home Depot employees and/or agents, was arrested by Chicago Police officers by filing a false report that Plaintiff had committed a crime when Defendants knew there was no probable cause for making such a report.

13.   HOME DEPOT, through its employees and/or agents, intended to restrain Plaintiff's freedom of movement against his will.

14.   HOME DEPOT, through its employees and/or agents, did not have legal authority to restrain Plaintiff's interest in freedom from confinement.

19

15.    As a direct proximate result of the actions of Defendant HOME DEPOT, through its employees and/or agents, Plaintiff was confined in custody and against his will for nearly ten (10) hours.

16.    Plaintiff, directly and proximately caused by Defendant's actions, suffered anguish, loss of time, lost earnings, physical discomfort, interruption of his business and embarrassment.

17.    The defendant HOME DEPOT approved and ratified the actions of its employees and/or agents as alleged in this Complaint.

18.    The defendant HOME DEPOT allowed its employees and/or agents to take such action and failed to discipline them for taking such actions.

19.    Defendant HOME DEPOT trained and instructed its employees and/or agents to take such actions, and did nothing to discourage them from taking such action.

20.    Defendant HOME DEPOT believes that it derives benefit when its personnel acts aggressively.

21.    Defendant HOME DEPOT, through its employees and/or agents, caused Plaintiff to be arrested by Chicago Police officers by filing a false report that Plaintiff had committed a crime when Defendants knew there was no probable cause for making such a report.

22.    The criminal case against Plaintiff was dismissed by order of the Circuit Court of Cook County judge before whom the case was heard.

23.    HOME DEPOT, though its employees and/or agents, failed to appear as required at the court date in which the case was dismissed.

24.    HOME DEPOT, through its employees and/or agents, acted with malice toward Plaintiff by filing criminal retail theft and criminal damages to property charges against Plaintiff when Defendants knew there was no probable cause for making such report.

25.    At the time and place as alleged in this paragraph, the defendant HOME DEPOT, by and through its employees and/or agents, committed the act of intentional infliction of emotional distress against the plaintiff:

a.    Conduct that was truly extreme and outrageous including battery, false imprisonment, malicious prosecution, and defaming the plaintiff;

20

b.  That Home Depot though its agents and/or employees intended that their conduct inflict severe emotional distress and/or knew that there was a high probability that the conduct would cause severe emotional distress; and

c.  The conduct in fact caused severe emotional distress to the plaintiff.

26.  The conduct by the defendant was so extreme and outrageous conduct as it went beyond all possible bounds of decency and is regarded as intolerable in society.

27.  Under the doctrine of respondeat superior, Defendant HOME DEPOT is liable for the intentional tortious actions of its employees and agents that are acting within the scope and authority granted by the employer, and from which the employer gains benefit, specifically the actions of its employees and/or agents complained of in this count.

28.  In addition to compensatory damages for the intentional tortious acts of its employees and agents which were approved and ratified by defendants HOME DEPOT, punitive damages are necessary to deter the defendant, and others like the defendant, from committing or authorizing similar torts.

WHEREFORE, Plaintiff KLODIAN NAZAJ prays that this Court enter judgment against defendant HOME DEPOT U.S.A. INC. for intentional infliction of emotional distress in the amount in excess of $50,000 for compensatory damages and $750,000 for punitive damages, plus costs of the lawsuit.

## COUNT XI
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Nagaj vs. Oestmann)

1.  On September 13, 2007, Defendant HOME DEPOT maintained a business selling building supplies and tools to the general public on North Avenue in the City of Chicago, County of Cook, State of Illinois.

2.  On or about September 13, 2007, Plaintiff NAZAJ was a customer at the store owned and operated by defendant HOME DEPOT on North Avenue in Chicago, Illinois.

3.    At all relevant times, Plaintiff NAZAJ was legally an invitee on the property of the HOME DEPOT on North Avenue in Chicago.

4.    At all relevant times, Defendant OESTERMANN was an employee and/or agent of Defendant HOME DEPOT.

5.    At all relevant times, Plaintiff entered the above referenced HOME DEPOT at approximately 1:30 p.m. to return a tool previously purchased at the store and to do additional shopping.

6.    After shopping at the HOME DEPOT, plaintiff proceeded to a checkout cashier to pay for the items he had selected while shopping at the store.

7.    After what plaintiff thought was making full payment for the items in his cart, he proceeded to walk toward the security guard who was located near the exit of the Home Depot to have his receipt checked before leaving the store.

8.    Right before plaintiff reached the security officer, plaintiff was accosted by two persons acting as employees and/or agents of defendant Home Depot.

9.    Defendant, HOME DEPOT, through its employees and/or agents, then placed handcuffs on plaintiff and took him into custody.

10.    At that time and place, these two men, acting as agent for their employer and within the scope of their employment, committed a battery upon the Plaintiff in that:

a.    Without permission of the Plaintiff, touched Plaintiff in an insulting, provoking, and offensive manner;

b.    Without permission of Plaintiff, grabbed Plaintiff's wrists and arms;

c.    Without permission of the Plaintiff, physically removed Plaintiff from the customer area of the store, placing Plaintiff in handcuffs against his will and forcing him to the security office;

11.    Defendant, through its employees and/or agents, acted with intent to cause the unpermitted offensive touching of Plaintiff's person.

12.    As a direct and proximate result of the actions of the Defendant, through its employees and/or agents, Plaintiff suffered damage to his person, anguish for the unpermitted offensive touching of his person, physical discomfort, and embarrassment.

22

13.    At the time and place as alleged in this paragraph, the defendant HOME DEPOT, by and through its employees and/or agents, committed false imprisonment of the Plaintiff by unlawful restraint of his freedom of movement against his will in that:

a.    Plaintiff was forcefully removed from the public customer area to a security office inside the building in handcuffs;

b.    Plaintiff was not to allow leave the security office;

c.    Plaintiff, due to a complaint signed by Home Depot employees and/or agents, was arrested by Chicago Police officers by filing a false report that Plaintiff had committed a crime when Defendants knew there was no probable cause for making such a report.

14.    HOME DEPOT, through its employees and/or agents, intended to restrain Plaintiff's freedom of movement against his will.

15.    HOME DEPOT, through its employees and/or agents, did not have legal authority to restrain Plaintiff's interest in freedom from confinement.

16.    As a direct proximate result of the actions of Defendant HOME DEPOT, through its employees and/or agents, Plaintiff was confined in custody and against his will for nearly ten (10) hours.

17.    Plaintiff, directly and proximately caused by Defendant's actions, suffered anguish, loss of time, lost earnings, physical discomfort, interruption of his business and embarrassment.

18.    The defendant HOME DEPOT approved and ratified the actions of its employees and/or agents as alleged in this Complaint.

19.    The defendant HOME DEPOT allowed its employees and/or agents to take such action and failed to discipline them for taking such actions.

20.    Defendant HOME DEPOT trained and instructed its employees and/or agents to take such actions, and did nothing to discourage them from taking such action.

21.    Defendant HOME DEPOT believes that it derives benefit when its personnel acts aggressively.

22.    Defendant HOME DEPOT, through its employees and/or agents, caused Plaintiff to be arrested by Chicago Police officers by filing a false report that Plaintiff had

committed a crime when Defendants knew there was no probable cause for making such a report.

23.    The criminal case against Plaintiff was dismissed by order of the Circuit Court of Cook County judge before whom the case was heard.

24.    HOME DEPOT, though its employees and/or agents, failed to appear as required at the court date in which the case was dismissed.

25.    HOME DEPOT, through its employees and/or agents, acted with malice toward Plaintiff by filing criminal retail theft and criminal damages to property charges against Plaintiff when Defendants knew there was no probable cause for making such report.

26.    At the time and place as alleged in this paragraph, the defendant OSTERMANN committed the act of intentional infliction of emotional distress against the plaintiff:

    a.    Conduct that was truly extreme and outrageous including battery, false imprisonment, malicious prosecution, and defaming the plaintiff;

    b.    That he intended that his conduct inflict severe emotional distress and/or knew that there was a high probability that the conduct would cause severe emotional distress; and

    c.    The conduct in fact caused severe emotional distress to the plaintiff.

27.    The conduct by the defendant was so extreme and outrageous conduct as it went beyond all possible bounds of decency and is regarded as intolerable in society.

28.    In addition to compensatory damages for the intentional tortious acts of defendant, OESTERMANN, punitive damages are necessary to deter the defendant, and others like the defendant, from committing or authorizing similar torts.

    WHEREFORE, Plaintiff KLODIAN NAZAJ prays that this Court enter judgment against defendant MIKE OSTERMANN for intentional infliction of emotional distress in the amount in excess of $50,000 for compensatory damages and $750,000 for punitive damages, plus costs of the lawsuit.

## COUNT XII

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Nagaj vs. Torres)

1.    On September 13, 2007, Defendant HOME DEPOT maintained a business selling building supplies and tools to the general public on North Avenue in the City of Chicago, County of Cook, State of Illinois.

2.    On or about September 13, 2007, Plaintiff NAZAJ was a customer at the store owned and operated by defendant HOME DEPOT on North Avenue in Chicago, Illinois.

3.    At all relevant times, Plaintiff NAZAJ was legally an invitee on the property of the HOME DEPOT on North Avenue in Chicago.

4.    At all relevant times, Defendant TORRES was an employee and/or agent of Defendant HOME DEPOT.

5.    At all relevant times, Plaintiff entered the above referenced HOME DEPOT at approximately 1:30 p.m. to return a tool previously purchased at the store and to do additional shopping.

6.    After shopping at the HOME DEPOT, plaintiff proceeded to a checkout cashier to pay for the items he had selected while shopping at the store.

7.    After what plaintiff thought was making full payment for the items in his cart, he proceeded to walk toward the security guard who was located near the exit of the Home Depot to have his receipt checked before leaving the store.

8.    Right before plaintiff reached the security officer, plaintiff was accosted by two persons acting as employees and/or agents of defendant Home Depot.

9.    Defendant, HOME DEPOT, through its employees and/or agents, then placed handcuffs on plaintiff and took him into custody.

10.    At that time and place, these two men, acting as agent for their employer and within the scope of their employment, committed a battery upon the Plaintiff in that:

   a.    Without permission of the Plaintiff, touched Plaintiff in an insulting, provoking, and offensive manner;

   b.    Without permission of Plaintiff, grabbed Plaintiff's wrists and arms;

25

    c.      Without permission of the Plaintiff, physically removed Plaintiff from the customer area of the store, placing Plaintiff in handcuffs against his will and forcing him to the security office;

    11.    Defendant, through its employees and/or agents, acted with intent to cause the unpermitted offensive touching of Plaintiff's person.

    12.    As a direct and proximate result of the actions of the Defendant, through its employees and/or agents, Plaintiff suffered damage to his person, anguish for the unpermitted offensive touching of his person, physical discomfort, and embarrassment.

    13.    At the time and place as alleged in this paragraph, the defendant HOME DEPOT, by and through its employees and/or agents, committed false imprisonment of the Plaintiff by unlawful restraint of his freedom of movement against his will in that:

    a.      Plaintiff was forcefully removed from the public customer area to a security office inside the building in handcuffs;

    b.      Plaintiff was not to allow leave the security office;

    c.      Plaintiff, due to a complaint signed by Home Depot employees and/or agents, was arrested by Chicago Police officers by filing a false report that Plaintiff had committed a crime when Defendants knew there was no probable cause for making such a report.

    14.    HOME DEPOT, through its employees and/or agents, intended to restrain Plaintiff's freedom of movement against his will.

    15.    HOME DEPOT, through its employees and/or agents, did not have legal authority to restrain Plaintiff's interest in freedom from confinement.

    16.    As a direct proximate result of the actions of Defendant HOME DEPOT, through its employees and/or agents, Plaintiff was confined in custody and against his will for nearly ten (10) hours.

    17.    Plaintiff, directly and proximately caused by Defendant's actions, suffered anguish, loss of time, lost earnings, physical discomfort, interruption of his business and embarrassment.

    18.    The defendant HOME DEPOT approved and ratified the actions of its employees and/or agents as alleged in this Complaint.

19.    The defendant HOME DEPOT allowed its employees and/or agents to take such action and failed to discipline them for taking such actions.

20.    Defendant HOME DEPOT trained and instructed its employees and/or agents to take such actions, and did nothing to discourage them from taking such action.

21.    Defendant HOME DEPOT believes that it derives benefit when its personnel acts aggressively.

22.    Defendant HOME DEPOT, through its employees and/or agents, caused Plaintiff to be arrested by Chicago Police officers by filing a false report that Plaintiff had committed a crime when Defendants knew there was no probable cause for making such a report.

23.    The criminal case against Plaintiff was dismissed by order of the Circuit Court of Cook County judge before whom the case was heard.

24.    HOME DEPOT, though its employees and/or agents, failed to appear as required at the court date in which the case was dismissed.

25.    HOME DEPOT, through its employees and/or agents, acted with malice toward Plaintiff by filing criminal retail theft and criminal damages to property charges against Plaintiff when Defendants knew there was no probable cause for making such report.

26.    At the time and place as alleged in this paragraph, the defendant, TORRES committed the act of intentional infliction of emotional distress against the plaintiff:

a.    Conduct that was truly extreme and outrageous including battery, false imprisonment, malicious prosecution, and defaming the plaintiff;

b.    That he intended that his conduct inflict severe emotional distress and/or knew that there was a high probability that the conduct would cause severe emotional distress; and

c.    The conduct in fact caused severe emotional distress to the plaintiff.

27.    The conduct by the defendant was so extreme and outrageous conduct as it went beyond all possible bounds of decency and is regarded as intolerable in society.

28.    In addition to compensatory damages for the intentional tortious acts of defendant, TORRES, punitive damages are necessary to deter the defendant, and others like the defendant, from committing or authorizing similar torts.

27

WHEREFORE, Plaintiff KLODIAN NAZAJ prays that this Court enter judgment against defendant FRED TORRES for intentional infliction of emotional distress in the amount in excess of $50,000 for compensatory damages and $750,000 for punitive damages, plus costs of the lawsuit.

## COUNT XIII

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Nagaj vs. Laman)

1.     On September 13, 2007, Defendant HOME DEPOT maintained a business selling building supplies and tools to the general public on North Avenue in the City of Chicago, County of Cook, State of Illinois.

2.     On or about September 13, 2007, Plaintiff NAZAJ was a customer at the store owned and operated by defendant HOME DEPOT on North Avenue in Chicago, Illinois.

3.     At all relevant times, Plaintiff NAZAJ was legally an invitee on the property of the HOME DEPOT on North Avenue in Chicago.

4.     At all relevant times, Defendant LAMAN was an employee and/or agent of Defendant HOME DEPOT.

5.     At all relevant times, Plaintiff entered the above referenced HOME DEPOT at approximately 1:30 p.m. to return a tool previously purchased at the store and to do additional shopping.

6.     After shopping at the HOME DEPOT, plaintiff proceeded to a checkout cashier to pay for the items he had selected while shopping at the store.

7.     After what plaintiff thought was making full payment for the items in his cart, he proceeded to walk toward the security guard who was located near the exit of the Home Depot to have his receipt checked before leaving the store.

8.     Right before plaintiff reached the security officer, plaintiff was accosted by two persons acting as employees and/or agents of defendant Home Depot.

9.     Defendant, HOME DEPOT, through its employees and/or agents, then placed handcuffs on plaintiff and took him into custody.

10.     At that time and place, these two men, acting as agent for their employer and within the scope of their employment, committed a battery upon the Plaintiff in that:

a.      Without permission of the Plaintiff, touched Plaintiff in an insulting, provoking, and offensive manner;

b.      Without permission of Plaintiff, grabbed Plaintiff's wrists and arms;

c.      Without permission of the Plaintiff, physically removed Plaintiff from the customer area of the store, placing Plaintiff in handcuffs against his will and forcing him to the security office;

11.     Defendant, through its employees and/or agents, acted with intent to cause the unpermitted offensive touching of Plaintiff's person.

12.     As a direct and proximate result of the actions of the Defendant, through its employees and/or agents, Plaintiff suffered damage to his person, anguish for the unpermitted offensive touching of his person, physical discomfort, and embarrassment.

13.     At the time and place as alleged in this paragraph, the defendant HOME DEPOT, by and through its employees and/or agents, committed false imprisonment of the Plaintiff by unlawful restraint of his freedom of movement against his will in that:

a.      Plaintiff was forcefully removed from the public customer area to a security office inside the building in handcuffs;

b.      Plaintiff was not to allow leave the security office;

c.      Plaintiff, due to a complaint signed by Home Depot employees and/or agents, was arrested by Chicago Police officers by filing a false report that Plaintiff had committed a crime when Defendants knew there was no probable cause for making such a report.

14.     HOME DEPOT, through its employees and/or agents, intended to restrain Plaintiff's freedom of movement against his will.

15.     HOME DEPOT, through its employees and/or agents, did not have legal authority to restrain Plaintiff's interest in freedom from confinement.

16.     As a direct proximate result of the actions of Defendant HOME DEPOT, through its employees and/or agents, Plaintiff was confined in custody and against his will for nearly ten (10) hours.

17.     Plaintiff, directly and proximately caused by Defendant's actions, suffered anguish, loss of time, lost earnings, physical discomfort, interruption of his business and embarrassment.

18.     The defendant HOME DEPOT approved and ratified the actions of its employees and/or agents as alleged in this Complaint.

19.     The defendant HOME DEPOT allowed its employees and/or agents to take such action and failed to discipline them for taking such actions.

20.     Defendant HOME DEPOT trained and instructed its employees and/or agents to take such actions, and did nothing to discourage them from taking such action.

21.     Defendant HOME DEPOT believes that it derives benefit when its personnel acts aggressively.

22.     Defendant HOME DEPOT, through its employees and/or agents, caused Plaintiff to be arrested by Chicago Police officers by filing a false report that Plaintiff had committed a crime when Defendants knew there was no probable cause for making such a report.

23.     The criminal case against Plaintiff was dismissed by order of the Circuit Court of Cook County judge before whom the case was heard.

24.     HOME DEPOT, though its employees and/or agents, failed to appear as required at the court date in which the case was dismissed.

25.     HOME DEPOT, through its employees and/or agents, acted with malice toward Plaintiff by filing criminal retail theft and criminal damages to property charges against Plaintiff when Defendants knew there was no probable cause for making such report.

26.     At the time and place as alleged in this paragraph, the defendant, LAMAN committed the act of intentional infliction of emotional distress against the plaintiff:

   a.     Conduct that was truly extreme and outrageous including battery, false imprisonment, malicious prosecution, and defaming the plaintiff;

   b.     That he intended that his conduct inflict severe emotional distress and/or knew that there was a high probability that the conduct would cause severe emotional distress; and

   c.     The conduct in fact caused severe emotional distress to the plaintiff.

30

27.    The conduct by the defendant was so extreme and outrageous conduct as it went beyond all possible bounds of decency and is regarded as intolerable in society.

28.    In addition to compensatory damages for the intentional tortious acts of defendant, LAMAN, punitive damages are necessary to deter the defendant, and others like the defendant, from committing or authorizing similar torts.

WHEREFORE, Plaintiff KLODIAN NAZAJ prays that this Court enter judgment against defendant ULISES LAMAN for intentional infliction of emotional distress in the amount in excess of $50,000 for compensatory damages and $750,000 for punitive damages, plus costs of the lawsuit.

## COUNT XIV
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Nagaj vs. Farmer)

1.    On September 13, 2007, Defendant HOME DEPOT maintained a business selling building supplies and tools to the general public on North Avenue in the City of Chicago, County of Cook, State of Illinois.

2.    On or about September 13, 2007, Plaintiff NAZAJ was a customer at the store owned and operated by defendant HOME DEPOT on North Avenue in Chicago, Illinois.

3.    At all relevant times, Plaintiff NAZAJ was legally an invitee on the property of the HOME DEPOT on North Avenue in Chicago.

4.    At all relevant times, Defendant FARMER was an employee and/or agent of Defendant HOME DEPOT.

5.    At all relevant times, Plaintiff entered the above referenced HOME DEPOT at approximately 1:30 p.m. to return a tool previously purchased at the store and to do additional shopping.

6.    After shopping at the HOME DEPOT, plaintiff proceeded to a checkout cashier to pay for the items he had selected while shopping at the store.

31

7.    After what plaintiff thought was making full payment for the items in his cart, he proceeded to walk toward the security guard who was located near the exit of the Home Depot to have his receipt checked before leaving the store.

8.    Right before plaintiff reached the security officer, plaintiff was accosted by two persons acting as employees and/or agents of defendant Home Depot.

9.    Defendant, HOME DEPOT, through its employees and/or agents, then placed handcuffs on plaintiff and took him into custody.

10.    At that time and place, these two men, acting as agent for their employer and within the scope of their employment, committed a battery upon the Plaintiff in that:

a.    Without permission of the Plaintiff, touched Plaintiff in an insulting, provoking, and offensive manner;

b.    Without permission of Plaintiff, grabbed Plaintiff's wrists and arms;

c.    Without permission of the Plaintiff, physically removed Plaintiff from the customer area of the store, placing Plaintiff in handcuffs against his will and forcing him to the security office;

11.    Defendant, through its employees and/or agents, acted with intent to cause the unpermitted offensive touching of Plaintiff's person.

12.    As a direct and proximate result of the actions of the Defendant, through its employees and/or agents, Plaintiff suffered damage to his person, anguish for the unpermitted offensive touching of his person, physical discomfort, and embarrassment.

13.    At the time and place as alleged in this paragraph, the defendant HOME DEPOT, by and through its employees and/or agents, committed false imprisonment of the Plaintiff by unlawful restraint of his freedom of movement against his will in that:

a.    Plaintiff was forcefully removed from the public customer area to a security office inside the building in handcuffs;

b.    Plaintiff was not to allow leave the security office;

c.    Plaintiff, due to a complaint signed by Home Depot employees and/or agents, was arrested by Chicago Police officers by filing a false report that Plaintiff had committed a crime when Defendants knew there was no probable cause for making such a report.

14.    HOME DEPOT, through its employees and/or agents, intended to restrain Plaintiff's freedom of movement against his will.

15.    HOME DEPOT, through its employees and/or agents, did not have legal authority to restrain Plaintiff's interest in freedom from confinement.

16.    As a direct proximate result of the actions of Defendant HOME DEPOT, through its employees and/or agents, Plaintiff was confined in custody and against his will for nearly ten (10) hours.

17.    Plaintiff, directly and proximately caused by Defendant's actions, suffered anguish, loss of time, lost earnings, physical discomfort, interruption of his business and embarrassment.

18.    The defendant HOME DEPOT approved and ratified the actions of its employees and/or agents as alleged in this Complaint.

19.    The defendant HOME DEPOT allowed its employees and/or agents to take such action and failed to discipline them for taking such actions.

20.    Defendant HOME DEPOT trained and instructed its employees and/or agents to take such actions, and did nothing to discourage them from taking such action.

21.    Defendant HOME DEPOT believes that it derives benefit when its personnel acts aggressively.

22.    Defendant HOME DEPOT, through its employees and/or agents, caused Plaintiff to be arrested by Chicago Police officers by filing a false report that Plaintiff had committed a crime when Defendants knew there was no probable cause for making such a report.

23.    The criminal case against Plaintiff was dismissed by order of the Circuit Court of Cook County judge before whom the case was heard.

24.    HOME DEPOT, though its employees and/or agents, failed to appear as required at the court date in which the case was dismissed.

25.    HOME DEPOT, through its employees and/or agents, acted with malice toward Plaintiff by filing criminal retail theft and criminal damages to property charges against Plaintiff when Defendants knew there was no probable cause for making such report.

26.     At the time and place as alleged in this paragraph, the defendant, FARMER committed the act of intentional infliction of emotional distress against the plaintiff:

    a.    Conduct that was truly extreme and outrageous including battery, false imprisonment, malicious prosecution, and defaming the plaintiff;

    b.    That she intended that her conduct inflict severe emotional distress and/or knew that there was a high probability that the conduct would cause severe emotional distress; and

    c.    The conduct in fact caused severe emotional distress to the plaintiff.

27.     The conduct by the defendant was so extreme and outrageous conduct as it went beyond all possible bounds of decency and is regarded as intolerable in society.

28.     In addition to compensatory damages for the intentional tortious acts of defendant, FARMER, punitive damages are necessary to deter the defendant, and others like the defendant, from committing or authorizing similar torts.

WHEREFORE, Plaintiff KLODIAN NAZAJ prays that this Court enter judgment against defendant ZABRINA FARMER for intentional infliction of emotional distress in the amount in excess of $50,000 for compensatory damages and $750,000 for punitive damages, plus costs of the lawsuit.

## COUNT XV

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Nagaj vs. Hosch)

1.     On September 13, 2007, Defendant HOME DEPOT maintained a business selling building supplies and tools to the general public on North Avenue in the City of Chicago, County of Cook, State of Illinois.

2.     On or about September 13, 2007, Plaintiff NAZAJ was a customer at the store owned and operated by defendant HOME DEPOT on North Avenue in Chicago, Illinois.

3.     At all relevant times, Plaintiff NAZAJ was legally an invitee on the property of the HOME DEPOT on North Avenue in Chicago.

34

4.     At all relevant times, Defendant HOSCH was an employee and/or agent of Defendant HOME DEPOT.

5.     At all relevant times, Plaintiff entered the above referenced HOME DEPOT at approximately 1:30 p.m. to return a tool previously purchased at the store and to do additional shopping.

6.     After shopping at the HOME DEPOT, plaintiff proceeded to a checkout cashier to pay for the items he had selected while shopping at the store.

7.     After what plaintiff thought was making full payment for the items in his cart, he proceeded to walk toward the security guard who was located near the exit of the Home Depot to have his receipt checked before leaving the store.

8.     Right before plaintiff reached the security officer, plaintiff was accosted by two persons acting as employees and/or agents of defendant Home Depot.

9.     Defendant, HOME DEPOT, through its employees and/or agents, then placed handcuffs on plaintiff and took him into custody.

10.     At that time and place, these two men, acting as agent for their employer and within the scope of their employment, committed a battery upon the Plaintiff in that:

a.     Without permission of the Plaintiff, touched Plaintiff in an insulting, provoking, and offensive manner;

b.     Without permission of Plaintiff, grabbed Plaintiff's wrists and arms;

c.     Without permission of the Plaintiff, physically removed Plaintiff from the customer area of the store, placing Plaintiff in handcuffs against his will and forcing him to the security office;

11.     Defendant, through its employees and/or agents, acted with intent to cause the unpermitted offensive touching of Plaintiff's person.

12.     As a direct and proximate result of the actions of the Defendant, through its employees and/or agents, Plaintiff suffered damage to his person, anguish for the unpermitted offensive touching of his person, physical discomfort, and embarrassment.

13.     At the time and place as alleged in this paragraph, the defendant HOME DEPOT, by and through its employees and/or agents, committed false imprisonment of the Plaintiff by unlawful restraint of his freedom of movement against his will in that:

a.   Plaintiff was forcefully removed from the public customer area to a
security office inside the building in handcuffs;

b.   Plaintiff was not to allow leave the security office;

c.   Plaintiff, due to a complaint signed by Home Depot employees and/or
agents, was arrested by Chicago Police officers by filing a false report that
Plaintiff had committed a crime when Defendants knew there was no
probable cause for making such a report.

14.   HOME DEPOT, through its employees and/or agents, intended to restrain
Plaintiff's freedom of movement against his will.

15.   HOME DEPOT, through its employees and/or agents, did not have legal
authority to restrain Plaintiff's interest in freedom from confinement.

16.   As a direct proximate result of the actions of Defendant HOME DEPOT,
through its employees and/or agents, Plaintiff was confined in custody and against his
will for nearly ten (10) hours.

17.   Plaintiff, directly and proximately caused by Defendant's actions, suffered
anguish, loss of time, lost earnings, physical discomfort, interruption of his business and
embarrassment.

18.   The defendant HOME DEPOT approved and ratified the actions of its
employees and/or agents as alleged in this Complaint.

19.   The defendant HOME DEPOT allowed its employees and/or agents to
take such action and failed to discipline them for taking such actions.

20.   Defendant HOME DEPOT trained and instructed its employees and/or
agents to take such actions, and did nothing to discourage them from taking such action.

21.   Defendant HOME DEPOT believes that it derives benefit when its
personnel acts aggressively.

22.   Defendant HOME DEPOT, through its employees and/or agents, caused
Plaintiff to be arrested by Chicago Police officers by filing a false report that Plaintiff had
committed a crime when Defendants knew there was no probable cause for making such
a report.

23.   The criminal case against Plaintiff was dismissed by order of the Circuit
Court of Cook County judge before whom the case was heard.

36

24.   HOME DEPOT, though its employees and/or agents, failed to appear as required at the court date in which the case was dismissed.

25.   HOME DEPOT, through its employees and/or agents, acted with malice toward Plaintiff by filing criminal retail theft and criminal damages to property charges against Plaintiff when Defendants knew there was no probable cause for making such report.

26.   At the time and place as alleged in this paragraph, the defendant, HOSCH committed the act of intentional infliction of emotional distress against the plaintiff:

a.   Conduct that was truly extreme and outrageous including battery, false imprisonment, malicious prosecution, and defaming the plaintiff;

b.   Intended that her conduct inflict severe emotional distress and/or knew that there was a high probability that the conduct would cause severe emotional distress; and

c.   The conduct in fact caused severe emotional distress to the plaintiff.

27.   The conduct by the defendant was so extreme and outrageous conduct as it went beyond all possible bounds of decency and is regarded as intolerable in society.

28.   In addition to compensatory damages for the intentional tortious acts of Defendant, HOSCH, punitive damages are necessary to deter the defendant, and others like the defendant, from committing or authorizing similar torts.

WHEREFORE, Plaintiff KLODIAN NAZAJ prays that this Court enter judgment against defendant KIMBERLY HOSCH for intentional infliction of emotional distress in the amount in excess of $50,000 for compensatory damages and $750,000 for punitive damages, plus costs of the lawsuit.

## COUNT XVI

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Nagaj vs. Hale)

1.   On September 13, 2007, Defendant HOME DEPOT maintained a business selling building supplies and tools to the general public on North Avenue in the City of Chicago, County of Cook, State of Illinois.

37

2.     On or about September 13, 2007, Plaintiff NAZAJ was a customer at the store owned and operated by defendant HOME DEPOT on North Avenue in Chicago, Illinois.

3.     At all relevant times, Plaintiff NAZAJ was legally an invitee on the property of the HOME DEPOT on North Avenue in Chicago.

4.     At all relevant times, Defendant HALE was an agent of Defendant HOME DEPOT.

5.     At all relevant times, Plaintiff entered the above referenced HOME DEPOT at approximately 1:30 p.m. to return a tool previously purchased at the store and to do additional shopping.

6.     After shopping at the HOME DEPOT, plaintiff proceeded to a checkout cashier to pay for the items he had selected while shopping at the store.

7.     After what plaintiff thought was making full payment for the items in his cart, he proceeded to walk toward the security guard who was located near the exit of the Home Depot to have his receipt checked before leaving the store.

8.     Right before plaintiff reached the security officer, plaintiff was accosted by two persons acting as employees and/or agents of defendant Home Depot.

9.     Defendant, HOME DEPOT, through its employees and/or agents, then placed handcuffs on plaintiff and took him into custody.

10.     At that time and place, these two men, acting as agent for their employer and within the scope of their employment, committed a battery upon the Plaintiff in that:

    a.     Without permission of the Plaintiff, touched Plaintiff in an insulting, provoking, and offensive manner;

    b.     Without permission of Plaintiff, grabbed Plaintiff's wrists and arms;

    c.     Without permission of the Plaintiff, physically removed Plaintiff from the customer area of the store, placing Plaintiff in handcuffs against his will and forcing him to the security office;

11.     Defendant, through its employees and/or agents, acted with intent to cause the unpermitted offensive touching of Plaintiff's person.

38

12.   As a direct and proximate result of the actions of the Defendant, through its employees and/or agents, Plaintiff suffered damage to his person, anguish for the unpermitted offensive touching of his person, physical discomfort, and embarrassment.

13.   At the time and place as alleged in this paragraph, the defendant HOME DEPOT, by and through its employees and/or agents, committed false imprisonment of the Plaintiff by unlawful restraint of his freedom of movement against his will in that:

a.   Plaintiff was forcefully removed from the public customer area to a security office inside the building in handcuffs;

b.   Plaintiff was not to allow leave the security office;

c.   Plaintiff, due to a complaint signed by Home Depot employees and/or agents, was arrested by Chicago Police officers by filing a false report that Plaintiff had committed a crime when Defendants knew there was no probable cause for making such a report.

14.   HOME DEPOT, through its employees and/or agents, intended to restrain Plaintiff's freedom of movement against his will.

15.   HOME DEPOT, through its employees and/or agents, did not have legal authority to restrain Plaintiff's interest in freedom from confinement.

16.   As a direct proximate result of the actions of Defendant HOME DEPOT, through its employees and/or agents, Plaintiff was confined in custody and against his will for nearly ten (10) hours.

17.   Plaintiff, directly and proximately caused by Defendant's actions, suffered anguish, loss of time, lost earnings, physical discomfort, interruption of his business and embarrassment.

18.   The defendant HOME DEPOT approved and ratified the actions of its employees and/or agents as alleged in this Complaint.

19.   The defendant HOME DEPOT allowed its employees and/or agents to take such action and failed to discipline them for taking such actions.

20.   Defendant HOME DEPOT trained and instructed its employees and/or agents to take such actions, and did nothing to discourage them from taking such action.

21.   Defendant HOME DEPOT believes that it derives benefit when its personnel acts aggressively.

22.    Defendant HOME DEPOT, through its employees and/or agents, caused Plaintiff to be arrested by Chicago Police officers by filing a false report that Plaintiff had committed a crime when Defendants knew there was no probable cause for making such a report.

23.    The criminal case against Plaintiff was dismissed by order of the Circuit Court of Cook County judge before whom the case was heard.

24.    HOME DEPOT, though its employees and/or agents, failed to appear as required at the court date in which the case was dismissed.

25.    HOME DEPOT, through its employees and/or agents, acted with malice toward Plaintiff by filing criminal retail theft and criminal damages to property charges against Plaintiff when Defendants knew there was no probable cause for making such report.

26.    At the time and place as alleged in this paragraph, the defendant, HALE committed the act of intentional infliction of emotional distress against the plaintiff:

    a.    Conduct that was truly extreme and outrageous including battery, false imprisonment, malicious prosecution, and defaming the plaintiff;

    b.    That he intended that his conduct inflict severe emotional distress and/or knew that there was a high probability that the conduct would cause severe emotional distress; and

    c.    The conduct in fact caused severe emotional distress to the plaintiff.

27.    The conduct by the defendant was so extreme and outrageous conduct as it went beyond all possible bounds of decency and is regarded as intolerable in society.

28.    In addition to compensatory damages for the intentional tortious acts of defendant, HALE, punitive damages are necessary to deter the defendant, and others like the defendant, from committing or authorizing similar torts.

WHEREFORE, Plaintiff KLODIAN NAZAJ prays that this Court enter judgment against defendant HENRY HALE for intentional infliction of emotional distress in the amount in excess of $50,000 for compensatory damages and $750,000 for punitive damages, plus costs of the lawsuit.

Respectfully submitted,

/s/David Nemeroff, One of Plaintiff's Attorneys

NEMEROFF LAW OFFICES, LTD.
Counsel for Plaintiff
55 W. Monroe St., Suite 600
Chicago, IL 60603
(312) 629-8800